IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| ELEVINELEVIN, LLC d/b/a ELEVIN STUDIOS,<br>    Plaintiff,<br><br>v.<br><br>TRAVELERS CASUALTY INSURANCE COMPANY OF AMERICA,<br>    Defendant. | CIVIL ACTION NO.<br>1:20-cv-11301 |

## COMPLAINT AND DEMAND FOR JURY TRIAL

### PARTIES

1. Plaintiff, ElevinElevin, LLC d/b/a Elevin Studios ("Elevin" or "plaintiff"), is a Massachusetts corporation with a principal place of business at 15 Channel Center Street, Unit 416, Boston, Suffolk County, Commonwealth of Massachusetts.

2. Defendant, Travelers Casualty Insurance Company of America ("Travelers" or "defendant"), is an insurance company incorporated in Connecticut with a principal place of business at One Tower Square, Hartford, Connecticut.

### JURISDICTION AND VENUE

3. Jurisdiction is proper because under 28 U.S.C. § 1332 the amount in controversy exceeds $75,000.00 and the matter in controversy is between citizens of different states.

4. Venue is proper because under 28 U.S.C. § 1391 a substantial part of the events or omissions giving rise to the claim occurred in the District of Massachusetts and a substantial part of property that is the subject of the action is situated in the District of Massachusetts.

### FACTS

5. The plaintiff owns and operates a film and photography studio serving a multitude of industries. Under normal circumstances, plaintiff is open for business Monday-Friday, 9:00 a.m. – 6:00 p.m. Since at least March 15, 2020, and continuing, plaintiff has seen

its business essentially halted completely as a result of the risk of COVID-19 infection. Currently, plaintiff is not able to operate its business location normally, resulting in total lost revenues of approximately $40,000.00 per month. Almost all of plaintiff's expenses, including rent, utilities, and insurance premiums, have remained essentially unchanged. These business losses are expected to continue into the foreseeable future.

6. On or around November 1, 2019, defendant issued to plaintiff a Commercial Property insurance policy, Policy Number 680-7H027661-19-42 ("the Policy"). The Policy period was November 1, 2019 to November 1, 2020. The full policy is attached hereto as Exhibit 1 and incorporated herein by reference.

7. The Policy is a straightforward contract: plaintiff agreed to pay monthly premiums to defendant in exchange for defendant's promise of insurance coverage for certain losses.

8. The Policy is an all-risk insurance policy. In an all-risk insurance policy, all risks of loss are covered unless they are specifically excluded. Consistent with the all-risk nature of the Policy, defendant specifically agreed to pay for all losses caused by "Covered Causes of Loss," defined as "RISKS OF DIREC T PHYSICAL LOSS" unless the loss is excluded or limited in the Policy. In the Policy, defendant also promised to pay for losses of business income sustained as a result of perils not excluded under the Policy. In particular, defendant promised to pay for losses of business income sustained as a result of a "suspension" of business "operations" during the "period of restoration."

9. Among other types of coverage, the Policy protects plaintiff against a loss of business income due to a "suspension" of the business's "operations" due to "direct physical loss of or damage to" property at the premises of the plaintiff's business. This type of coverage is often referred to as business interruption coverage. Pursuant to this section of the Policy, Defendants promised to pay for "the actual loss of business income you sustain due to the necessary suspension of your 'operations' during the 'period of restoration' … caused by direct physical loss of or physical damage to property at the 'scheduled premises.'"

10. The Policy also provides "Extra Expense" coverage, under which defendant promised to pay expenses incurred that would not have been incurred absent the physical loss of or physical damage to property at the premises of the business. Pursuant to this section of the Policy, Defendants promised to pay for "reasonable and necessary Extra Expense you incur during the 'period of restoration' that you would not have incurred if there had been no direct physical loss or physical damage to property at the 'scheduled premises.'"

11. The Policy also provides coverage for "Extended Business Income." Specifically, Defendants promised to pay for the actual loss of Business Income incurred during the

period that "(a) Begins on the date property is actually repaired, rebuilt or replaced and "operations" are resumed; and (b) Ends on the earlier of: (i) The date you could restore your "operations" with reasonable speed, to the condition that would have existed if no direct physical loss or damage occurred; or (ii) 60 consecutive days after the date determined in (1)(a) above."

12. The Policy also provides "Business Income from Dependent Properties" coverage, under which defendant promised to pay for the loss of business income sustained due to direct physical loss of or physical damage at the premises of a dependent property caused by or resulting from a "Covered Cause of Loss." Subject to limits of insurance, this coverage requires Defendants to "pay for the actual loss of Business Income you sustain due to direct physical loss or physical damage at the premises of a dependent property."

13. Additionally, the Policy provides "Civil Authority" coverage, under which defendant promised to pay for loss of business income sustained when the action of a civil authority prohibits access to the business premises. The Policy also provides "Civil Authority" coverage for "the actual loss of Business Income you sustain when access to your 'scheduled premises' is specifically prohibited by order of a civil authority as the direct result of a Covered Cause of Loss to property in the immediate area of your 'scheduled premises'." This coverage begins "72 hours after the order of a civil authority and coverage will end at the earlier of: (a) When access is permitted to your 'scheduled premises'; or (b) 30 consecutive days after the order of the civil authority." This Civil Authority provision is an independent basis for business interruption coverage. That is, it can be triggered even when the standard business interruption coverage is not."

14. The Policy does not contain any exclusion that would apply to allow defendant to deny coverage for losses caused by the interruption of plaintiff's business and the actions of civil authorities.

15. Accordingly, because the Policy is an all-risk policy and does not specifically exclude the losses that plaintiff has suffered, those losses are covered.

16. At all relevant times, plaintiff duly complied with its obligations under the Policy, and paid the requisite premiums.

17. COVID-19 is a deadly communicable disease that has already infected over 1.6 million people in the United States and caused more than 100,000 deaths.[1] There is currently no vaccine for COVID-19.

18. On March 11, 2020, The World Health Organization ("WHO") declared the COVID-19 outbreak a pandemic.

19. The incubation period for COVID-19—the time between exposure (becoming infected) and symptom onset—can be up to 14 days.[2]

20. During this period (also known as the "pre-symptomatic" period), infected persons can be contagious and disease transmission can occur before the infected person shows any symptoms or has any reason to believe they are infected.[3]

21. Not only is COVID-19 spread by human-to-human transfer, but the WHO has confirmed that COVID-19 can exist on contaminated objects or surfaces.[4]

---

[1] See https://www.cdc.gov/coronavirus/2019-ncov/cases-updates/cases-in-us.html (last viewed May 28, 2020).

[2] See https://www.who.int/docs/default-source/coronaviruse/situation-reports/20200402-sitrep-73-covid19.pdf?sfvrsn=5ae25bc7_2 (last viewed May 4, 2020).

[3] See https://www.who.int/docs/default-source/coronaviruse/situation-reports/20200402-sitrep-73-covid19.pdf?sfvrsn=5ae25bc7_2 ("In a small number of case reports and studies, pre-symptomatic transmission has been documented through contact tracing efforts and enhanced investigation of clusters of confirmed cases. This is supported by data suggesting that some people can test positive for COVID-19 from 1-3 days before they develop symptoms. Thus, it is possible that people infected with COVID-19 could transmit the virus before significant symptoms develop.") (last viewed May 4, 2020).

[4] See https://www.who.int/news-room/commentaries/detail/modes-of-transmission-of-virus-causing-covid-19- implications-for-ipc-precaution-recommendations ("[T]ransmission of the COVID-19 virus can occur by direct contact with infected people and indirect contact with surfaces in the immediate environment or with objects used on the infected person") (last viewed May 4, 2020).

22. According to a study documented in The New England Journal of Medicine, COVID-19 was detectable in aerosols for up to three hours, up to four hours on copper, up to 24 hours on cardboard, and up to three days on plastic and stainless steel.[5]

23. The study's results suggest that individuals could become infected with COVID-19 through indirect contact with surfaces or objects used by an infected person, whether they were symptomatic or not.[6]

24. Shortly after the WHO declared COVID-19 a pandemic, civil authorities around the country began issuing "stay at home" and "shelter in place" orders, including the Commonwealth of Massachusetts.

25. The Commonwealth's responses to COVID-19 have been widely publicized.  On March 10, 2020, Governor Baker declared a state of emergency in Massachusetts due to the outbreak of COVID-19.  On March 15, 2020, Governor Baker prohibited gatherings of 25 or more throughout the Commonwealth, and on March 23, 2020 this was reduced to gathering of 10 or more.  That same day, Governor Baker announced a stay-at-home advisory and ordered all non-essential businesses closed.  On May 18, 2020, Governor Baker announced a Three-Stage Reopening Plan.  As of that date, according to the Reopening Plan published by the Baker Administration, there were more than 86,000 confirmed cases of COVID-19 in Massachusetts and at least 5,700 deaths from COVID-19.

26. As a result of the foregoing facts and circumstances, there has been direct physical loss of and/or damage to property at the premises covered under the Policy by, among other things, the property being damaged, access to the property being denied, customers being prevented from physically occupying the property, the property being physically uninhabitable by customers, the function of the property being nearly eliminated or destroyed, and/or a suspension of business operations occurring at the property.

27. Since at least March 15, 2020, and continuing, plaintiff has not been able to operate normally.  Plaintiff has also sustained business income losses due to direct physical loss or physical damage at the premises of dependent properties.

---

[5] See https://www.nih.gov/news-events/news-releases/new-coronavirus-stable-hours-surfaces (last viewed May 4, 2020); see also https://www.who.int/news-room/commentaries/detail/modes-of-transmission-of-viruscausing-covid-19-implications-for-ipc-precaution-recommendations (last viewed May 4, 2020).

[6] Id.

28. Plaintiff's business has suffered a suspension of normal business operations as defined in the Policy in terms of a significant slowdown of business activities, sustained losses of business income, and incurred expenses.  Plaintiff's business also continues to incur normal operating expenses, such as rent and utilities.

29. These losses and expenses have continued through the date of filing of this action and are expected to continue into the future.

30. These losses and expenses are not excluded from coverage under the Policy. And because the Policy is an all-risk policy and plaintiff has complied with its contractual obligations, plaintiff is entitled to payment for these losses and expenses.

31. Accordingly, plaintiff filed a notice of claim and provided notice of its losses and expenses to defendant, consistent with the terms and procedures of the Policy.  On May 7, 2020, defendant served a written denial of all plaintiff's claims.

32. Defendant has performed an unreasonable investigation or no investigation at all.

33. Defendant has compelled plaintiff to initiate this litigation to recover sums under the policy to which plaintiff is clearly entitled.

COUNT I
BREACH OF CONTRACT

34. Plaintiff restates and realleges all prior paragraphs as if the same were set forth fully hereat.

35. The Policy is an insurance contract under which defendant was paid premiums in exchange for its promise to pay plaintiff's losses for claims covered by the Policy.

36. Defendant breached the contract by failing to pay plaintiff's losses under various portions of the Policy, including but not necessarily limited to, the portion of the Policy providing coverage for business interruption, lost business income, extra expense, extended business income, business income from dependent properties, and losses stemming from the action of civil authority.

37. Plaintiff has complied with all applicable provisions of the Policy, including payment of premiums and notice of claim provisions.

38. As a direct and proximate result of defendant's breach of the contract, plaintiff has suffered and continues to suffer damages, including but not limited to lost business income and extra expenses.

WHEREFORE, the plaintiff demands judgment against the defendant for the above-described damages, plus attorney's fees, interests, costs, and any other remedy this Court deems just and fair.

## COUNT II
## BREACH OF THE COVENANT OF GOOD FAITH AND FAIR DEALING

39. Plaintiff restates and realleges all prior paragraphs as if the same were set forth fully hereat.

40. By the actions set forth above, defendant deprived plaintiff of receiving the benefits of their contract.

41. The conduct of defendant constitutes a breach of the implied covenant of good faith and fair dealing. By way of example and not limitation: defendant represented to plaintiff that it would extend insurance coverage for certain losses in exchange for the payment of premiums, and then when those losses occurred defendant refused to supply coverage.

42. As a direct and proximate result of the defendant's breach of the implied covenant of good faith and fair dealing, plaintiff has suffered and continues to suffer damages, including but not limited to lost business income and extra expenses.

WHEREFORE, the plaintiff demands judgment against the defendants for the above-described damages, plus attorney's fees, interests, costs, and any other remedy this Court deems just and fair.

## COUNT III
## VIOLATION OF M.G.L. c. 93A § 11

43. The plaintiff repeats and incorporates herein the foregoing paragraphs as if each were set forth here in its entirety.

44. M.G.L. c. 93A §2 provides that "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful." Any violation by an insurer of the provisions of M.G.L. c. 176D are a per se violation of M.G.L. c. 93A.

45. Defendant has engaged in unfair claims settlement practices in violation of M.G.L. c. 176D, § 9 by, among other things, misrepresenting pertinent facts or insurance policy provisions relating to coverages at issue, refusing to pay claims without conducting a reasonable investigation based upon all available information, and failing to effectuate prompt, fair and equitable settlements of claims in which liability has become reasonably clear.

46. These acts and practices are unfair and deceptive in material respects, offend public policy, are immoral, unethical, oppressive and unscrupulous and violate M.G.L. 176D, § 9 and M.G.L. c. 93A, § 2.

47. As a direct and proximate result of defendant's unfair and deceptive practices, plaintiff has suffered and continues to suffer damages.

WHEREFORE, the plaintiff demands judgment against the defendant for the above-described compensatory damages, multiple damages, punitive damages, attorney's fees, plus interests, costs, and all other remedies this Court deems just and fair.

DEMAND FOR JURY TRIAL

The plaintiff demands a jury trial on all claims herein.

Respectfully submitted,
ElevinElevin, LLC d/b/a Elevin Studios
By its attorneys,

/s/ Kathy Jo Cook
Kathy Jo Cook, BBO# 631389
kjcook@kjclawfirm.com
/s/ John T Martin
John T. Martin, BBO# 676344
jmartin@kjclawfirm.com
/s/ Benjamin H. Duggan
Benjamin H. Duggan, BBO# 684981
bduggan@kjclawfirm.com
KJC Law Firm, LLC
10 Tremont Street, 6th Floor
Boston, MA 02108
617-720-8447